# EXHIBIT "A"

Prepared by: KIM DANIELS



LOAN #: 

# NOTE

MARCH 14, 2007                    ARDMORE                    PENNSYLVANIA
[Date]                           [City]                      [State]

112 W SPRING AVE, ARDMORE, PA 19003-1222
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 182,000.00     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     6.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  FIRST        day of each month beginning on
 MAY 01, 2007       . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  APRIL 01, 2037      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,195.61     .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  FIFTEEN        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**MULTISTATE FIXED RATE NOTE**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                    Initials: _____

Page 1 of 2

 -5N (0207).01     CHL (010/04)(d)          VMP Mortgage Solutions, Inc. (800)521-7291                    Form 3200 1/01



LOAN #:

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## PAY TO THE ORDER OF

## WITHOUT RECOURSE
## COUNTRYWIDE HOME LOANS, INC

BY _Michele Sjolander_

## MICHELE SJOLANDER
## EXECUTIVE VICE PRESIDENT

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Bernice L. Shippen_ _____ (Seal)      _____ (Seal)
BERNICE L. SHIPPEN              -Borrower         -Borrower

_____ (Seal)      _____ (Seal)
                        -Borrower         -Borrower

*[Sign Original Only]*

-5N (0207).01   CHL (10/04)                    Page 2 of 2                    Form 3200 1/01

# EXHIBIT "B"

| | |
|---|---|
| **RECORDER OF DEEDS** <br> MONTGOMERY COUNTY <br> *Nancy J. Becker* <br><br> One Montgomery Plaza <br> Swede and Airy Streets ~ Suite 303 <br> P.O. Box 311 ~ Norristown, PA 19404 <br> Office: (610) 278-3289 ~ Fax: (610) 278-3869  | **MTG BK 12070 PG 02323 to 02345** <br> INSTRUMENT # : 2007039624 <br> RECORDED DATE: 03/30/2007 02:43:48 PM <br><br>  <br><br><br> **MONTGOMERY COUNTY ROD** |

| OFFICIAL RECORDING COVER PAGE | | Page 1 of 23 |
|---|---|---|

| | |
|---|---|
| **Document Type:** Mortgage | **Transaction #:** |
| **Document Date:** 03/14/2007 | **Document Page Count:** 22 |
| **Reference Info:** BERNICE L SHIPPEN | **Operator Id:** |

| | |
|---|---|
| **RETURN TO:** (Simplifile) <br> Silk Abstract Company <br> 1000 Germantown Pike Suite J-4 <br> Plymouth Meeting, PA 19462 <br> (610) 994-8600 | **SUBMITTED BY:** <br> Silk Abstract Company <br> 1000 Germantown Pike Suite J-4 <br> Plymouth Meeting, PA 19462 <br> (610) 994-8600 |

**\* PROPERTY DATA:**
Parcel ID #:
Address:
Municipality:     Lower Merion Township
School District:    Lower Merion

**\* ASSOCIATED DOCUMENT(S):**

| FEES / TAXES: | | MTG BK 12070 PG 02323 to 02345 |
|---|---|---|
| Recording Fee:Mortgage | $46.50 | Recorded Date: 03/30/2007 02:43:48 PM |
| Additional Pages Fee | $36.00 | |
| Affordable Housing Pages | $36.00 | I hereby CERTIFY that |
| **Total:** | **$118.50** | this document is <br> recorded in the <br> Recorder of Deeds <br> Office in Montgomery <br> County, Pennsylvania. <br><br> **Nancy J. Becker** <br> **Recorder of Deeds** |

# PLEASE DO NOT DETACH

## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
\*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

Prepared By:
KIM DANIELS
COUNTRYWIDE HOME LOANS, INC.


1600 GOLF ROAD, SUITE 300 T2
ROLLING MEADOWS
IL 60008

Phone:
After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.


MS SV-79 DOCUMENT PROCESSING

P.O.Box 10423
Van Nuys, CA 91410-0423
Parcel Number:

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
LOWER MERION TOWNSHIP
112 W SPRING AVE  CONDO 9
$5.00
SHIPPEN BERNICE L  DATE: 03/30/2007 LG

Premises:
112 W SPRING AVE
ARDMORE
PA 19003-1222

Montgomery ——— [Space Above This Line For Recording Data]

[Doc ID #]

# MORTGAGE

**PENNSYLVANIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 17

VMP®-6A(PA) (0508)    CHL (10/05)(d)    VMP Mortgage Solutions, Inc    Form 3039  1/01





DOC ID #:

MIN

DEFINITIONS
Words used in multiple sections of this document are d                                              3,
11, 13, 18, 20 and 21. Certain rules regarding the usag                                             in
Section 16.
**(A) "Security Instrument"** means this document, which is dated MARCH 14, 2007                     ,
together with all Riders to this document.
**(B) "Borrower"** is
BERNICE L SHIPPEN

Borrower is the mortgagor under this Security Instrument.                                            .
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this
Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender"** is
COUNTRYWIDE HOME LOANS, INC.

Lender is a                                                                                         .
CORPORATION

organized and existing under the laws of NEW YORK                           .
Lender's address is
4500 Park Granada MSN# SVB-314
Calabasas, CA 91302-1613                                                                            .
**(E) "Note"** means the promissory note signed by Borrower and dated MARCH 14, 2007                .
The Note states that Borrower owes Lender
ONE HUNDRED EIGHTY TWO THOUSAND and 00/100

Dollars (U.S. $ 182,000.00          ) plus interest. Borrower has promised to pay this debt in regular

DOC ID #:

Periodic Payments and to pay the debt in full not late

(F) **"Property"** means the property that is described be_____ _____ __ _____s in the Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instr_____ng Riders are to be executed by Borrower [check box as a

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☒ Condominium Rider | |
| ☐ Balloon Rider | ☐ Planned Unit Develop | |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"C_____es, Fees, and Assessments"** means all dues, fees, assessments and other charge_____wer or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

DOC ID #:

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

          COUNTY                              of                                                                :

      [Type of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO

which currently has the address of
                    112 W SPRING AVE, ARDMORE                                                  ,
                                 [Street/City]
Pennsylvania 19003-1222 ("Property Address"):
            [Zip Code]

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

DOC ID #:

THIS SECURITY INSTRUMENT combines unifuniform
covenants with limited variations by jurisdiction to coning real
property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower
shall pay when due the principal of, and interest on,ent
charges and late charges due under the Note. Borrowto
Section 3. Payments due under the Note and this cy.
However, if any check or other instrument received ity
Instrument is returned to Lender unpaid, Lender may der
the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:
(a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any
such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or
entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such
other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender
may return any payment or partial payment if the payment or partial payments are insufficient to bring the
Loan any payment or partial payment insufficient to bring the Loan current,
withounder or prejudice to its rights to refuse such payment or partial payments in
the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each
Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied
funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If
Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return
them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under
the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future
against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument
or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments
accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the
Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to
each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to
late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal
balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a
sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the
late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from
Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in
full. To the extent that any excess exists after the payment is applied to the full payment of one or more
Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be
applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the
Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

DOC ID #:

**3. Funds for Escrow Items.** Borrower shall pay to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮e under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in accordance with the provisions of Section 10. These it▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ny time during the term of the Loan, Lender may re▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮nd Assessments, if any, be escrowed by Borrower, and su▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮m. Borrower shall promptly furnish to Lender all notices o▮▮▮▮▮▮▮▮▮▮▮▮▮▮all pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instru▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮nt and agreement" is used in Section 9. If Borrower is obligated to pay Escro▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

DOC ID #:

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If

DOC ID #:

Lender requires, Borrower shall promptly give to Lender ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ otices. If Borrower obtains any form of insurance coverage, not ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ge to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borro▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ in writing, any insurance proceeds, whether or not the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ be applied to restoration or repair of the Property, if t▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ nd Lender's security is not lessened. During such repair a▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ old such insurance proceeds until Lender has had an oppo▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums ▇▇▇▇▇▇▇▇▇▇ rument, whether or not then due, with the excess, if any, paid to Borrower. Such i▇▇▇▇▇▇▇▇▇▇▇▇ applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is

DOC ID #:

completed. If the insurance or condemnation proceeds █████████████████████████ Property,
Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has
reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give
Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shal███████████████████████████████ss,
Borrower or any persons or entities acting at the di████████████████████████████ or
consent gave materially false, misleading, or inaccur███████████████████████████ to
provide Lender with material information) in connecti███████████████████████████ but
are not limited to, representations concerning Borrow███████████████████████████ pal
residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a)
Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a
legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this
Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for
enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or
regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is
reason████████████████t Lender's interest in the Property and rights under this Security Instrument,
includ████████████████sing the value of the Property, and securing and/or repairing the Property.
Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority
over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its
interest in the Property and/or rights under this Security Instrument, including its secured position in a
bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make
repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or
other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take
action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It
is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured
by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement
and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.
If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender
agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan,
Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the
Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that
previously provided such insurance and Borrower was required to make separately designated payments
toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage
substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the
cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected
by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue
to pay to Lender the amount of the separately designated payments that were due when the insurance coverage
ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in
lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan

DOC ID #: ▮

is ultimately paid in full, and Lender shall not be require▮ ▮ on such loss reserve. Lender can no longer require loss reserve ▮ (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments tow▮ ▮wer shall pay the premiums required to maintain Mortgage ▮ ▮ss reserve, until Lender's requirement for Mortgage Insu▮ ▮nt between Borrower and Lender providing for such te▮ ▮ble Law. Nothing in this Section 10 affects Borrower's obli▮ ▮.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premi▮

A▮ ▮nts, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or

DOC ID #:

repair is not economically feasible or Lender's security ... ...ds shall
be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any,
paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds
shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if
any, paid to Borrower.

In the event of a partial taking, destruction, or loss ... ...lue
of the Property immediately before the partial taking, ... ...an
the amount of the sums secured by this Security Instru... ...n,
or loss in value, unless Borrower and Lender otherwi... ...ity
Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction:
(a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value
divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss
in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value
of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of
the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and
Lende... ..., the Miscellaneous Proceeds shall be applied to the sums secured by this
Securi... ...t the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing
Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to
respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply
the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this
Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower
Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous
Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in
Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest
in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration
has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a
ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's
interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for
damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and
shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in
the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for
payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to
Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any
Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any
Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of
the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any
Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including,
without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of

DOC ID #:

Borrower or in amounts less than the amount then due, sh███████████████████████████e of any
right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co███████████████████████████████his Security Instrument; (b) is not personally obligated to ███████████████████████████████████nd (c) agrees that Lender and any other Borrower c██████████████████████████████████████ny accommodations with regard to the terms of this Se█████████████████████████████████r's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borro██████████████████████ose of protecting Lender's interest in the Property and rights under this Securi███████████████████████t not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by

DOC ID #:

this Security Instrument is also required under Applicabl...                                      ll satisfy
the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow th...                                                  but such silence shall not be construed as a prohibition...                                              ny provision or clause of this Security Instrument or the...                                             all not affect other provisions of this Security Instrumen...                                           the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those...                     ed in a bond for deed, contract for deed, installment sales contract or escrow agreem...                 he transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall  continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency,



DOC ID #:

instrumentality or entity; or (d) Electronic Funds Trans[                    ]Security
Instrument and obligations secured hereby shall remain [                    ]ccurred.
However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known a[                    ]nts due under the Note and this Security Instrument and pe[                    ]der the Note, this Security Instrument, and Applicable Law[                    ]an Servicer unrelated to a sale of the Note. If there is a[                    ]en written notice of the change which will state the[                    ]the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instru[                    ]other party has breached any provision of, or any duty owed by reason of, this Se[                    ]h Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).



DOC ID #:

Borrower shall promptly give Lender written notice [redacted] wsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If [redacted] or regulatory authority, or any private party, that any rem [redacted] nce affecting the Property is necessary, Borrower shall pro [redacted] nce with Environmental Law. Nothing herein shall create an [redacted] up.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall f[redacted]f the right to reinstate after acceleration and the right to assert in the forecl[redacted]existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

DOC ID #:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
BERNICE L. SHIPPEN                                  -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

DOC ID #: ▮▮▮▮▮▮

**COMMONWEALTH OF PENNSYLVANIA,** Montgomery                    **County** ss:

On this, the ___14TH___ day of ___march, 2007___, before me, the undersigned officer, personally appeared ___BERNICE L. SHIPPEN___

_____ known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires: ___09|08|08___

Kenneth S. Kondrad

NOTARY PUBLIC
Title of Officer

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KENNETH S. KONDRAD, Notary Public
City of Philadelphia, Phila. County
My Commission Expires September 8, 2008

**Certificate of Residence**
I, ___KENNETH S. KONDRAD___, do hereby certify that the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this ___14TH___ day of ___MARCH, 2007___.

Kenneth S. Kondrad
Agent of Mortgagee

VMP -6A(PA) (0508)        CHL (10/05)        Page 17 of 17        Form 3039 1/01

Commonwealth Land Title Insurance Corporation

**▲ LandAmerica**
**Commonwealth**

Case No.

## SCHEDULE A
### - continued -

### LEGAL DESCRIPTION

ALL THAT CERTAIN, Unit 9 (hereinafter called "Unit") in the property known and identified as Ardmore Avenue Condominium.    SITUATE in the Township of Lower Merion, County of Montgomery, Commonwealth of Pennsylvania, which property heretofore has been submitted to the provisions of the Unit Property Act of Pennsylvania, by Declaration Creating and Establishing Ardmore Avenue Condominium dated November 30, 1973 made by Grantor and recorded in the Office for the recording of Deeds in and for said County in Deed Book No.3934&c (hereinafter called "Declaration") and the accompanying Declaration Plan of Ardmore Avenue Condominium dated November 30, 1973 and recorded in said Office in Plan Book No. 2 page 102 and code of Regulations of Ardmore Avenue Condominium dated November 30, 1973 and recorded in said office in Deed Book 3934 page 365&c (hereinafter called the "Declaration" Plan) the Unit designated of the Unit being specifically set forth in the Declaration plan and the Unit being generally described in the Declaration including 6.8216% undivided interest in the Common Elements appertaining and assigned to Unit, as more specifically defined the Declaration.

UNDER AND SUBJECT to (1) the provisions of said Unit Property Act of Pennsylvania (2) the encumbrance, conditions, restrictions, covenants, agreements and releases as contained and set forth or referred to in the Declaration (3) the certain RIGHT OF WAY Indenture dated November 30, 1974 recorded in said Office in Deed Book No 4001 page 216&c, whereby Philadelphia Suburban Water Company acquired and exclusive right of way easement for a 6 inch watermain within a certain strip of land 20 feet in width constituting a portion of the Common Elements of Ardmore Avenue Condominium (4) the certain right of way Indenture dated October 31, 1974 recorded in said in said Office in Deed Book No. 4005 page 533&c, whereby Philadelphia Electric Company acquire a right to install, maintain , operate, repair, and replace communication gas and electric transmission and distribution facilities upon the property of Ardmore Avenue Condominium and (5) the certain right of way Indenture dated October 31, 1974 recorded in said Office in Deed Book No 4004 pages 136%&c, whereby the Bell Telephone Company of Pennsylvania acquired a right to locate, relocate, construct, erect, renew replace, add to operate maintain communications facilities on and across the property of Ardmore Avenue Condominium

BEING the same premises which Gloria M. Vause by her Attorney-in-fact, Alice Vause, by Power of Attorney dated 7/30/2004, by deed dated 12/10/2004 and recorded 12/29/2004 in Montgomery County in book 5538 on page 1302, granted and conveyed unto Bernice L. Shippen, in fee.

Parcel Number:

**Silk Abstract Company**
1000 Germantown Pike, Suite J4
Plymouth Meeting, PA  19462

Schedule A - Page 2 Commitment No.
This commitment is invalid unless the Information
Sheet and Schedules A and B are attached

Prepared by: KIM DANIELS

**COUNTRYWIDE HOME LOANS, INC.**

.

Branch 
1600 GOLF ROAD, SUITE 300 T2
DATE:         03/14/2007          ROLLING MEADOWS, IL 60008
CASE #:                           Phone: (800)998-8223
DOC ID #:                         Br Fax No.: (847)545-4753
BORROWER: BERNICE L. SHIPPEN
PROPERTY ADDRESS: 112 W SPRING AVE
                   ARDMORE, PA 19003-1222

## LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
• Legal Description Exhibit A



DOC ID #:

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this FOURTEENTH      day of
MARCH, 2007      , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed  (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at:

112 W SPRING AVE, ARDMORE, PA 19003-1222

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:

ARDMORE CONDOMINIUMS

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses,
proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration
or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations;
and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and
assessments imposed pursuant to the Constituent Documents.

**MULTISTATE CONDOMINIUM RIDER**-Single Family-**Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT**

Page 1 of 3

VMP -8R (0512)    **CHL (12/05)(d)**

VMP Mortgage Solutions, Inc.                                    **Form 3140  1/01**





DOC ID # ████████████

**B. Property Insurance.** So long as the Owners ████████████ accepted insurance carrier, a "master" or "blanket" policy on ~~the Condominium Project which is satis~~factory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section ████████████ early premium installments for property insurance on ████████████ nder Section 5 to maintain property insurance coverag ████████████ xtent that the required coverage is provided by the Own ████████████

What Lender requires as a condition of this w ████████████

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that t ████████████ aintains a public liability insurance policy acceptable in form, amount, and e ████████████ er.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

.

DOC ID #:
BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)
BERNICE L. SHIPPEN                                         - Borrower

_____ (Seal)
                                                          - Borrower

_____ (Seal)
                                                          - Borrower

_____ (Seal)
                                                          - Borrower

-8R (0512)    CHL (12/05)         Page 3 of 3              Form 3140 1/01

# EXHIBIT "C"

RECORDING REQUESTED BY:
Bank of America, N.A.
6860 Argonne St
Unit A
Denver, CO 80249

Investor Loan # ____

This document was prepared by _____ _____

_____[Space Above This Line For Recording Data]_____

# LOAN MODIFICATION AGREEMENT

Borrower ("I"):[1] Bernice L Shippen

Original Lender/Beneficiary Lender or Servicer ("Lender"): Bank of America, N.A.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):
March 14, 2007
Loan Number:
Property Address: (See Exhibit A for Legal Description if applicable)
"Property": 108 W SPRING AVE CONDO 9, ARDMORE, PA 19003-1232

See Exhibit B for assignments of record if applicable

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this
document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate
Order

If my representations and covenants in Section 1 continue to be true in all material respects, then this Loan Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (i) the Mortgage on the Property, and (ii) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

   A. I am experiencing a financial hardship, and as a result, (i) the Loan is in default or a default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to ensure that the monthly mortgage payments are made now or in the near future.

   B. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A Permissible change would be any transfer that the lender is required by law to allow.

   C. I have provided documentation for all income that I receive and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for this Loan Modification ("Modification").

   D. Under penalty of perjury, all documents and information that I (or any third party on my behalf) have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct.

   E. All payments required under the trial period plan or loan workout plan have been made.

   F. If I received a discharge of the debt associated with this loan in a bankruptcy proceeding subsequent to the execution of the Loan Documents, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.  If prior to the Modification Effective Date as set forth in Section 3 below, Lender
    determines that any of my representations in Section 1 above are no longer true and
    correct, or any covenant in Section 1 has not been performed, the Loan Documents
    will not be modified and this Agreement will terminate. In that event, Lender will
    have all of the rights and remedies provided by the Loan Documents, subject to
    applicable law.

B.  The Loan Documents will not be modified unless and until (i) I return signed and
    notarized copies of this Agreement to Lender, (ii) the Lender accepts this
    Modification by signing it, and (iii) the Modification Effective Date (as defined in
    Section 3 below) has occurred. Lender will not be obligated to modify the Loan
    Documents if I fail to meet any of the requirements under this Agreement.

3.  **The Modification.** If all of my representations in Section 1 continue to be true in all
    material respects and all preconditions to the modification set forth in Section 2 above
    have been met, the Loan Documents will automatically become modified on January 1,
    2022 (the "Modification Effective Date"). I understand that if any payments required as a
    precondition to this modification under a trial period plan or loan workout plan have not
    been made, this modification will not take effect.

    A.  The Maturity Date will be: December 1, 2052.

    B.  The modified principal balance of the Note will include all amounts and arrearages
        outstanding as of the Modification Effective Date (including unpaid and deferred
        interest, fees, charges, escrow advances, and other costs, but excluding unpaid late
        charges, collectively, "Unpaid Amounts") less any amounts paid to Lender but not
        previously credited to the Loan. The new principal balance of the Note will be
        $158,306.08 (the "New Principal Balance"). Any fees or charges incurred in
        connection with the servicing of this loan which were not invoiced before we
        calculated the Unpaid Amounts will appear on your monthly statement under "Fees
        and Charges." These amounts may be paid when billed or at any time afterward. They
        will not accrue interest or late fees. If they remain unpaid, they must be satisfied,
        subject to applicable law, at the earlier of: (i) the date you sell or transfer an interest
        in the Property, (ii) the date the entire New Principal Balance is paid, or (iii) the
        Maturity Date. I understand that by agreeing to add the Unpaid Amounts to the
        outstanding principal balance, the added Unpaid Amounts accrue interest based on
        the interest rate in effect under this Agreement. I also understand that this means
        that interest will now accrue on the unpaid interest that is added to the outstanding
        principal balance, which would not happen without this Agreement.

    C.  Interest at the rate of 4.625% will begin to accrue on the New Principal Balance as
        of December 1, 2021 and the first new monthly payment on the New Principal
        Balance will be due on January 1, 2022. The payment schedule for the modified Loan
        is as follows:

| Months | Interest Rate | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|--------|---------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|
| 372    | 4.625%        | $801.83                                       | May adjust periodically $252.29          | May adjust periodically $1,054.12 | 01/01/2022 |

*If escrow payments are collected by Lender, Lender may adjust such payments periodically in accordance with applicable law. Therefore, the total monthly payment may change accordingly.

The terms in this Section 3.C. supersede any provisions to the contrary in the Loan Documents, and previous loan modifications including (but not limited to) provisions for an adjustable or interest-only rate.

If this is a pay-option adjustable-rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only option, or any other payment option will no longer be offered. As a result, the monthly payments described in the above payment schedule for the modified loan will be the minimum payment that will be due each month for the remaining term of the loan. The modified loan will not allow negative amortization, which would have (i) allowed payments that are less than the interest and principal due and (ii) resulted in the unpaid interest added to the outstanding principal balance.

D. Subject to applicable law. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

4. **Additional Agreements.** Lender and I agree to the following:

   A. All persons, or their authorized representative(s), who signed the Loan Documents have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, meaning that the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse, subject to applicable law, may continue to be held liable for the obligation under the Loan Documents); or (iii) Lender has waived this requirement in writing.

   B. This Agreement supersedes the terms of any modification, forbearance, trial period plan, or loan workout plan that I previously entered into with Lender.

C. I will comply, except to the extent that they are modified by this Agreement or applicable law, with all covenants, agreements, and requirements of the Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may periodically change over the term of the Loan.

D. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms unless otherwise modified by law.

E. All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. Except as otherwise specifically provided in, and as expressly modified by, this Agreement, Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents, subject to applicable law.

F. I will, subject to applicable law, pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this subsection. I shall pay Lender the Funds for Escrow Items unless Lender waives the obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. The obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all

Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this subsection.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

G. On and after the Modification Effective Date, and notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules, or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I all sums secured by the Mortgage must be paid. If these sums are not paid prior to the expiration of this period, Lender may, subject to applicable law, invoke any remedies permitted by the Mortgage without further notice or demand.

H. On and after the Modification Effective Date, Lender will allow the transfer and assumption of the Loan, including this Agreement, only to a transferee of the property as permitted under the Garn-St Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. On and after the Modification Effective Date, any provision in the Note (or in any addendum or amendment to the Note) that allowed for the assessment of a penalty for full or partial prepayment of the Note, is null and void.

J. I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by Lender's procedures to ensure that the modified mortgage loan is in first-lien position and/or is fully enforceable upon modification. Under any circumstance and not withstanding anything else to the contrary in this Agreement, if Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void. I will allow Lender to attach an Exhibit to this Loan Modification that will include a

Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office to allow for recording if and when recording becomes necessary for Lender, subject to applicable law.

K. I will execute such other documents as may be reasonably necessary either to (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. A corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign such corrected Agreement, the terms of the original Loan Documents, or the most recent modified terms currently in effect, shall continue in full force, and the terms of the original Loan Documents, or the most recent modified terms currently in effect, will not be modified by this Agreement.

L. OPTIONAL PRODUCTS PURCHASED AFTER CLOSING. Any optional product(s) I may have purchased after the closing of the Loan, the cost for which I agreed to have added to the Total Monthly Payment, will (i) remain in force as long as I add the amount due and owing to the Total Monthly Payment each month and (ii) continue to be governed by the terms of the documents the provider of the optional product delivered to me ("Governing Documents"), unless I (a) notify the provider of the optional product of my request to cancel; or (b) fail to pay any and all amounts payable when due, at which time the optional product may terminate as provided under the Governing Documents.

M. If any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced, Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents that Lender requests of me under this 4.M. shall be referred to as the "Documents." I will deliver the Documents within 10 days after I receive Lender's written request for such replacement.

In Witness Whereof, the Lender and I have executed this Agreement.
(Signatures must be signed exactly as printed, original signature required and no photocopies accepted.)

_Bernice L. Shippen_

Bernice L Shippen

(Must be signed exactly as printed)

_12 / 27 / 2021_

Signature date (MM/DD/YYYY)

**DO NOT WRITE BELOW THIS LINE**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THIS SECTION IS FOR INTERNAL USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans Servicing LP
By: Mortgage Connect Document Solutions, LLC, its attorney in fact

By: _____

Name/Title

**Josie Almendarez**
**ASSISTANT SECRETARY**

**DEC 3 0 2021**
_____

Date

# EXHIBIT "D"

| | | MTG BK 12697 PG 00101 to 00104<br>INSTRUMENT # : 2009096335<br>RECORDED DATE: 09/03/2009 03:07:33 PM |
|---|---|---|





**RECORDER OF DEEDS**
MONTGOMERY COUNTY
*Nancy J. Becker*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**MONTGOMERY COUNTY ROD**

| OFFICIAL RECORDING COVER PAGE | Page 1 of 4 |
|---|---|

| | |
|---|---|
| Document Type:   Mortgage Assignment | Transaction #: |
| Document Date:   06/29/2009 | Document Page Count: |
| Reference Info: | Operator Id:                    gbrown |
| **RETURN TO: (Mail)**<br>PHELAN, HALLINAN & SCHMIEG<br>ONE PENN CENTER<br>SUITE 1400<br>PHILADELPHIA, PA 19103-1814 | **SUBMITTED BY:**<br>J A M TRANSFERS, INC<br>604 THORNCROF DR<br>WESTCHESTER, PA 19380 |

**\* PROPERTY DATA:**
Parcel ID #:
Address:          112 W SPRING AVE
                  CONDO  9
                  PA
Municipality:
School District:

**\* ASSOCIATED DOCUMENT(S):**
MTG BK 12070 PG 02323

| FEES / TAXES: | | |
|---|---|---|
| Recording Fee:Mortgage Assignment | $40.50 | |
| Rejected Document Fee | $5.00 | |
| **Total:** | **$45.50** | |

MTG BK 12697 PG 00101 to 00104
Recorded Date: 09/03/2009 03:07:33 PM

I hereby CERTIFY that
this document is
recorded in the
Recorder of Deeds
Office in Montgomery
County, Pennsylvania.

*Nancy J. Becker*
**Nancy J. Becker**
**Recorder of Deeds**

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

Prepared By:   Phelan Hallinan & Schmieg, LLP
1617 JFK Boulevard, Suite 1400, One Penn Center Plaza
Philadelphia, PA 19103

Return To:    Phelan Hallinan & Schmieg, LLP
1617 JFK Boulevard, Suite 1400, One Penn Center Plaza
Philadelphia, PA 19103
ryan.galvin@fedphe.com

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
LOWER MERION
112 W SPRING AVE 9
SHIPPEN BERNICE L        $10.00
DATE: 09/02/2009         JO

CPN:

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that "**Mortgage Electronic Registration Systems, Inc.**" hereinafter "**Assignor**" the holder of the Mortgage hereinafter mentioned, for and in consideration of the sum of ONE DOLLAR ($1.00) lawful money unto it in hand paid by **BAC HOME LOANS SERVICING, L.P., F/K/A COUNTRYWIDE HOME LOANS SERVICING, L.P., "Assignee,"** the receipt whereof is acknowledged, has granted, bargained, sold, assigned, transferred and set over unto the said Assignee, its successors and assigns, ALL THAT CERTAIN Indenture of Mortgage given and executed by **BERNICE L. SHIPPEN** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS A NOMINEE FOR COUNTRYWIDE HOME LOANS,INC.,** bearing the date **03/14/2007**, in the amount of **$182,000.00**, together with the Note and indebtedness therein mentioned, said Mortgage being recorded on **03/30/2007** in the County of **MONTGOMERY**, Commonwealth of Pennsylvania, in **Mortgage Book 12070 Page 02323, MIN**

Being Known as Premises: **112 WEST SPRING AVENUE, ARDMORE, PA 19003**
Parcel No

The transfer of the mortgage and accompanying rights was effective at the time the loan was sold and consideration passed to the Assignee. This assignment is solely intended to describe the instrument sold in a manner sufficient to put third parties on public notice of what has been sold.

Also the Bond or Obligation in the said Indenture of Mortgage recited, and all Moneys, Principal and Interest, due and to grow due thereon, with the Warrant of Attorney to the said Obligation annexed. Together with all Rights, Remedies and incidents thereunto belonging. And all its Right, Title, Interest, Property, Claim and Demand, in and to the same:

TO HAVE, HOLD, RECEIVE AND TAKE, all and singular the hereditaments and premises granted and assigned, or mentioned and intended so to be, with the appurtenances unto Assignee, its successors and assigns, to and for its only proper use, benefit and behoof forever; subject, nevertheless, to the equity of redemption of said Mortgagor in the said Indenture of Mortgage named, and his/her/their heirs and assigns therein.

IN WITNESS WHEREOF, the said "**Assignor**" has caused its Corporate Seal to be herein affixed and these presents to be duly executed by its proper officers this 29th day of June, 2009.

RECEIVED

Mortgage Electronic Registration Systems, Inc.

By: _Judith T. Romano_

Judith T. Romano, Assistant Secretary and Vice President

Sealed and Delivered
in the presence of us;

State of Pennsylvania          :
                                        ss.
County of Philadelphia       :

On this 29th day of ___June___, 20 09, before me, the subscriber, personally appeared Judith T. Romano, who acknowledged herself to be the Assistant Secretary and Vice President of **Mortgage Electronic Registration Systems, Inc.**, and that she, as such Assistant Secretary and Vice President, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Stamp/Seal:

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MAURA HUTCHINSON, Notary Public
City of Philadelphia, Phila. County
My Commission Expires March 6, 2012

_Maura Hutc_
Notary Public

The precise address of the within named Assignee is:
**7105 CORPORATE DRIVE**
**PLANO, TX 75024**
By: _DET_
    (For Assignee)

**After recording return to:**
**Phelan Hallinan & Schmieg, LLP**
**1617 JFK Boulevard, Suite 1400**
**One Penn Center Plaza**
**Philadelphia, PA 19103**

**June 26, 2009**
**Document Execution**
**PHS** ▮

ALL THAT CERTAIN, Unit 9 (hereinafter called the 'Unit') in the property known and identified as Ardmore Avenue Condominium.SITUATE in the Township of Lower Merion, County of Montgomery, Commonwealth of Pennsylvania, which property heretofore has been submitted to the provisions of the Unit Property Act of Pennsylvania, by Declaration Creating and Establishing Ardmore Avenue Condominium dated November 30, 1973 made by Grantor and recorded in the Office for the recording of Deeds in and for said County in Deed book No. 3934&c (hereinafter called 'Declaration) and the accompanying Declaration Plan of Ardmore Avenue Condominium dated November 30, 1973 and recorded in said Office in Plan Book No. 2 page 102 and code of Regulations of Ardmore Avenue Condominium dated November 30, 1973 and recorded in said Office in Deed Book 3934 page 365&c (hereinafter called the 'Declaration' Plan) the Unit designation of the Unit being specifically set forth in the Declaration Plan and the Unit being generally described in the Declaration including 6.8216% undivided interest in the Common Elements appertaining and assigned to the Unit, as more specifically defined the Declaration.

UNDER AND SUBJECT to (1) the provisions of said Unit Property Act of Pennsylvania (2) the encumbrance, conditions, restrictions, covenants, agreements and releases as contained and set forth or referred to in the Declaration (3) the certain RIGHT OF WAY Indenture dated November 30, 1974 recorded in said Office in Deed Book No 4001 page 216&c, whereby Philadelphia Suburban Water Company acquired an exclusive right of way easement for a 6 inch watermain within a certain strip of land 20 feet in width constituting a portion of the Common Elements of Ardmore Avenue Condominium (4) the certain right of way Indenture dated October 31, 1974 recorded in said Office in Deed Book No. 4005 page 533&c, whereby Philadelphia Electric Company acquire a right to install, maintain, operate, repair, and replace communication gas and electric transmission and distribution facilities upon the Property of Ardmore Avenue Condominium and (5) the certain right of way Indenture dated October 31, 1974 recorded in said Office in Deed Book No 4004 pages 136%&c, whereby the Bell Telephone Company of Pennsylvania acquired a right to locate, relocate, construct, erect, renew replace, add to operate maintain communications facilities on and across the property of Ardmore Avenue Condominium

Being Parcel ███████████████████

Being the same premises which Gloria M. Fitzgerald, single woman and V Dessie Vause, single woman by Deed dated 3/5/2002 and recorded 5/28/2002 in Montgomery County in Deed Book 5409 Page 2086 conveyed unto Gloria M Vause, single woman, previously known as Gloria M Fitzgerald, in fee.

 

**MTG BK 15257 PG 01848 to 01851**
INSTRUMENT # : 2021055708
RECORDED DATE: 05/13/2021 09:15:32 AM



5937083-0022W

RECORDER OF DEEDS
MONTGOMERY COUNTY
*Jeanne Sorg*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**MONTGOMERY COUNTY ROD**

| **OFFICIAL RECORDING COVER PAGE** | Page 1 of 4 |
|---|---|

| | | | |
|---|---|---|---|
| **Document Type:** | Mortgage Assignment | **Transaction #:** | |
| **Document Date:** | 04/14/2021 | **Document Page Count:** | 3 |
| **Reference Info:** | | **Operator Id:** | |

| | |
|---|---|
| **RETURN TO: (**Simplifile) | **PAID BY:** |
| First American Mortgage Solutions | FIRST AMERICAN MORTGAGE SOLUTIONS |
| 3 FIRST AMERICAN WAY | |
| SANTA ANA, CA 92707 | |
| (817) 961-2308 | |

**\* PROPERTY DATA:**
Parcel ID #:
Address:            108 W SPRING AVE
                    CONDO  9
                    PA
Municipality:       Lower Merion Township
                    (100%)
School District:    Lower Merion

**\* ASSOCIATED DOCUMENT(S):**
MTG BK 12070 PG 02323

| **FEES / TAXES:** | | |
|---|---|---|
| Recording Fee: Mortgage | | MTG BK 15257 PG 01848 to 01851 |
| Assignment | $80.75 | Recorded Date: 05/13/2021 09:15:32 AM |
| **Total:** | $80.75 | I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office in Montgomery County, Pennsylvania. |



**Jeanne Sorg**
**Recorder of Deeds**

Rev1 2016-01-29

# PLEASE DO NOT DETACH

THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
████████ LOWER MERION TOWNSHIP
108 W SPRING AVE CONDO 9
SHIPPEN BERNICE L                                                    $15.00
████████ 5/10/2021                                                    JW

_____ [Space Above This Line for Recording Data] _____

This Document Prepared By:            When Recorded Mail To:
**JULIO ESTRADA**                     **FIRST AMERICAN TITLE COMPANY**
**BANK OF AMERICA**                   **1795 INTERNATIONAL WAY**
**MC:** █████████                     **IDAHO FALLS, ID 83402**
**4909 SAVARESE CIR.**
**TAMPA, FL 33634**
**(800) 444-430**
**Tax/Parcel #** ████████████

# ASSIGNMENT OF MORTGAGE

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS** (herein "Assignor"), whose address is **1901 E. Voorhees St., Suite C, Danville, IL 61834; and P.O. Box 2026, Flint, MI 48501-2026**, does hereby grant, assign, transfer and convey unto **BANK OF AMERICA, N.A.** (herein "Assignee"), whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93065**, and its successors and assigns all its right, title and interest in and to a certain Mortgage described below.

Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS**
Mortgagor(s): **BERNICE L SHIPPEN**
Date of Mortgage: **MARCH 14, 2007**
Original Loan Amount: **$182,000.00**
Property Address: **112 W SPRING AVE, ARDMORE, PENNSYLVANIA 19003**

Recorded on **MARCH 30, 2007** in **INSTRUMENT NO. 2007039624 BOOK 12070 PAGE 02323** of the **official Records of MONTGOMERY COUNTY**, State of **PENNSYLVANIA**.
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:

Assignment of Mortgage - MERS ████████                    Page 1        ████████████████

**MERS Phone#: (888) 679-6377**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on

**APR 1 4 2021**
_____
Date

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS**

By: _____         *Pallavi Thotapalle*
(Signature)                          (Print Name)
                                     **VICE PRESIDENT**

I hereby certify that the correct address of the assignee is: **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93065**

_____              *Pallavi Thotapalle*
(signature)                          Attest (Print Name)

_____ [Space Below This Line for Acknowledgments] _____
**STATE/COMMONWEALTH OF TEXAS**
**COUNTY OF DALLAS**

On   this,   the  **14**  day   of   **April** , 20 **21** , before   me
**Teresa M Robinson** ,   the   undersigned   officer,   personally   appeared
**Pallavi Thotapalle** , who acknowledged himself/herself to be the **VICE PRESIDENT** of
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS**, a company, and that he/she as such **VICE PRESIDENT** being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the company by himself/herself as **VICE PRESIDENT**

In witness whereof, I hereunto set my hand and official seal.

_____
Notary Public

Teresa M Robinson
My Commission Expires
09/03/2024
ID No. 132659611

Printed Name: Teresa M Robinson
My commission expires: 09|03|2024

Assignment of Mortgage                    Page 2

MERS Phone#: (888) 679-6377

**EXHIBIT A**

**BORROWER(S): BERNICE L SHIPPEN**

**LOAN NUMBER:** ███████████

**LEGAL DESCRIPTION:**

ALL THAT CERTAIN, UNIT 9 (HEREINAFTER CALLED "UNIT") IN THE PROPERTY KNOWN AND IDENTIFIED AS ARDMORE AVENUE CONDOMINIUM. SITUATE IN THE TOWNSHIP OF LOWER MERION, COUNTY OF MONTGOMERY, COMMONWEALTH OF PENNSYLVANIA, WHICH PROPERTY HERETOFORE HAS BEEN SUBMITTED TO THE PROVISIONS OF THE UNIT PROPERTY ACT OF PENNSYLVANIA, BY DECLARATION CREATING AND ESTABLISHING ARDMORE AVENUE CONDOMINIUM DATED NOVEMBER 30, 1973 MADE BY GRANTOR AND RECORDED IN THE OFFICE FOR THE RECORDING OF DEEDS IN AND FOR SAID COUNTY IN DEED BOOK NO.3934&C (HEREINAFTER CALLED "DECLARATION) AND THE ACCOMPANYING DECLARATION PLAN OF ARDMORE AVENUE CONDOMINIUM DATED NOVEMBER 30, 1973 AND RECORDED IN SAID OFFICE IN PLAN BOOK NO. 2 PAGE 102 AND CODE OF REGULATIONS OF ARDMORE AVENUE CONDOMINIUM DATED NOVEMBER 30, 1973 AND RECORDED IN SAID OFFICE IN DEED BOOK 3934 PAGE 365&C (HEREINAFTER CALLED THE "DECLARATION" PLAN) THE UNIT DESIGNATED OF THE UNIT BEING SPECIFICALLY SET FORTH IN THE DECLARATION PLAN AND THE UNIT BEING GENERALLY DESCRIBED IN THE DECLARATION INCLUDING 6.8216% UNDIVIDED INTEREST IN THE COMMON ELEMENTS APPERTAINING AND ASSIGNED TO UNIT, AS MORE SPECIFICALLY DEFINED THE DECLARATION.

UNDER AND SUBJECT TO (1) THE PROVISIONS OF SAID UNIT PROPERTY ACT OF PENNSYLVANIA (2) THE ENCUMBRANCE, CONDITIONS, RESTRICTIONS, COVENANTS, AGREEMENTS AND RELEASES AS CONTAINED AND SET FORTH OR REFERRED TO IN THE DECLARATION (3) THE CERTAIN RIGHT OF WAY INDENTURE DATED NOVEMBER 30, 1974 RECORDED IN SAID OFFICE IN DEED BOOK NO 4001 PAGE 216&C, WHEREBY PHILADELPHIA SUBURBAN WATER COMPANY ACQUIRED AND EXCLUSIVE RIGHT OF WAY EASEMENT FOR A 6 INCH WATERMAIN WITHIN A CERTAIN STRIP OF LAND 20 FEET IN WIDTH CONSTITUTING A PORTION OF THE COMMON ELEMENTS OF ARDMORE AVENUE CONDOMINIUM (4) THE CERTAIN RIGHT OF WAY INDENTURE DATED OCTOBER 31, 1974 RECORDED IN SAID IN SAID OFFICE IN DEED BOOK NO. 4005 PAGE 533&C, WHEREBY PHILADELPHIA ELECTRIC COMPANY ACQUIRE A RIGHT TO INSTALL, MAINTAIN , OPERATE, REPAIR, AND REPLACE COMMUNICATION GAS AND ELECTRIC TRANSMISSION AND DISTRIBUTION FACILITIES UPON THE PROPERTY OF ARDMORE AVENUE CONDOMINIUM AND (5) THE CERTAIN RIGHT OF WAY INDENTURE DATED OCTOBER 31, 1974 RECORDED IN SAID OFFICE IN DEED BOOK NO 4004 PAGES 136%&C, WHEREBY THE BELL TELEPHONE COMPANY OF PENNSYLVANIA ACQUIRED A RIGHT TO LOCATE, RELOCATE, CONSTRUCT, ERECT, RENEW REPLACE, ADD TO OPERATE MAINTAIN COMMUNICATIONS FACILITIES ON AND ACROSS THE PROPERTY OF ARDMORE AVENUE CONDOMINIUM

ALSO KNOWN AS: 112 W SPRING AVE, ARDMORE, PENNSYLVANIA 19003

Assignment of Mortgag███████████        Page 3

MERS Phone#: (888) 679-6377

 

MTG BK 15667 PG 01379 to 01381
INSTRUMENT # : 2022092623
RECORDED DATE: 09/26/2022 10:53:47 AM



RECORDER OF DEEDS
MONTGOMERY COUNTY
*Jeanne Sorg*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**MONTGOMERY COUNTY ROD**

## OFFICIAL RECORDING COVER PAGE

Page 1 of 3

| | | | |
|---|---|---|---|
| **Document Type:** | Mortgage Assignment | **Transaction #:** | |
| **Document Date:** | 09/14/2022 | **Document Page Count:** | 2 |
| **Reference Info:** | | **Operator Id:** | |

| | |
|---|---|
| **RETURN TO: (**Simplifile) | **PAID BY:** |
| Westcor Land Title Insurance Company | WESTCOR LAND TITLE INSURANCE COMPANY |
| 875 Concourse Parkway South Suite 200 | |
| Maitland, FL 32751 | |
| (484) 532-5594 | |

**\* PROPERTY DAT**
Parcel ID #:
Address:      108 W SPRING AVE
              CONDO  9
              PA
Municipality:     Lower Merion Township
              (100%)
School District:    Lower Merion

**\* ASSOCIATED DOCUMENT(S):**
MTG BK 12070 PG 02323

| **FEES / TAXES:** | | MTG BK 15667 PG 01379 to 01381 |
|---|---|---|
| Recording Fee:Mortgage | | Recorded Date: 09/26/2022 10:53:47 AM |
| Assignment | $80.75 | |
| **Total:** | $80.75 | I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office in Montgomery County, Pennsylvania. |



**Jeanne Sorg**
**Recorder of Deeds**

Rev1 2016-01-29

# PLEASE DO NOT DETACH

THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
████████████LOWER MERION TOWNSHIP
108 W SPRING AVE  CONDO  9
SHIPPEN BERNICE L ████████████████████████

**PREPARED BY:**
Bank of America, N A , successor by merger to
BAC HOME LOANS SERVICING, LP, formerly
known as COUNTRYWIDE HOME LOANS
SERVICING, LP
C/O FirstKey Mortgage, LLC, 900 Third Avenue,
5th Floor, New York, NY 10022
**WHEN RECORDED RETURN TO:**
Westcor Land Title Insurance Co
401 Plymouth Road, Suite 500
Plymouth Meeting, PA 19462

Parcel # ████████████ 

### GAP ASSIGNMENT OF MORTGAGE
**\*\*This Assignment Is Made To Correct The Chain Of Assignments Of Record Wherein, By Error Or Mistake, The
Order Of Recordation Was Incorrect. This Assignment Shall Immediately Precede The Original Assignment
Recorded 05/13/2021 IN BOOK: 15257 PAGE: 01848 INSTRUMENT: 2021055708.\*\***

FOR VALUE RECEIVED, the undersigned, **Bank of America, N.A., successor by merger to BAC HOME
LOANS SERVICING, LP, formerly known as COUNTRYWIDE HOME LOANS SERVICING, LP,** located
at C/O FirstKey Mortgage, LLC, 900 Third Avenue, 5th Floor, New York, NY 10022,
("ASSIGNOR/GRANTOR"), hereby grants, conveys, assigns to. **MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS MORTAGEEE, AS NOMINEE FOR COUNTRYWIDE HOME
LOANS, INC., ITS SUCCESSORS AND ASSIGNS,** located at  P O  Box 2026, Flint, MI 48501,
("ASSIGNEE/GRANTEE"), all beneficial interest under that certain **MORTGAGE,** dated **03/14/2007** and executed
by **BERNICE L. SHIPPEN,** borrower(s) to  **Mortgage Electronic Registration Systems, Inc., as nominee for
COUNTRYWIDE HOME LOANS, INC,** as original lender, and certain instrument recorded **03/30/2007,** in
**BOOK: 12070 PAGE: 02323 INSTRUMENT: 2007039624,** in the Official Records of **MONTGOMERY**
County, the State of **Pennsylvania,** given to secure a certain Promissory Note in the amount of **\$182,000.00**
covering the property located at **112 W SPRING AVE, ARDMORE, PA 19003.**

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due
thereon, with interest, and all rights accrued or to accrue under said Mortgage including the right to have
reconveyed, in whole or in part, the real property described therein

CERTIFICATE **OF** BUSINESS RESIDENCE. I, **Neil Coffey,** do certify that the Assignee's precise residence is
**P.O. Box 2026, Flint, MI 48501**

Dated· September 14th, 2022

**ASSIGNOR:** ▮▮▮▮▮▮▮▮▮▮▮▮ er to
**BAC HOME LOANS SERVICING, LP, formerly known as**
**COUNTRYWIDE HOME LOANS SERVICING, LP**

By: **Westcor Land Title Insurance Company, it's attorney-in-fact**

By: ▮▮▮▮▮▮▮▮▮▮▮

Name: ▮▮▮▮▮▮▮▮▮

**Title:  Authorized Signatory**

**\* Power of Attorney recorded in Montgomery County, PA in**
**Book 272 Page 2994 Instrument 2022078404**

State of· ▮▮▮▮▮▮▮▮▮▮

County of: Montgomery

Before me, **Kathleen Bonfiglio,** duly commissioned Notary Public, on this day personally appeared **Neil Coffey, Authorized Signatory of Westcor Land Title Insurance Company, attorney-in-fact for Bank of America, N.A., successor by merger to BAC HOME LOANS SERVICING, LP, formerly known as COUNTRYWIDE HOME LOANS SERVICING, LP,** known to me (or proved to me on the oath of _____ or through _____) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed in his/her authorized capacity.

Given under my hand and seal of office this 14th day of September, 2022.

Notary Public's Signature

**Printed Name: Kathleen Bonfiglio**

**My Commission Expires: 5/17/2025**

Property Address: 112 W SPRING AVE, ARDMORE, PA 19003

Commonwealth of Pennsylvania-Notary Seal
Kathleen Bonfiglio, Notary Public
Montgomery County
My Commission Expires May 17, 2025
Commission Number 1394477

 



**MTG BK 15667 PG 01382 to 01384**
INSTRUMENT # : 2022092624
RECORDED DATE: 09/26/2022 10:53:48 AM

6154914-0020P

RECORDER OF DEEDS
MONTGOMERY COUNTY
*Jeanne Sorg*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**MONTGOMERY COUNTY ROD**

| OFFICIAL RECORDING COVER PAGE | Page 1 of 3 |
|---|---|

| | | | |
|---|---|---|---|
| **Document Type:** | Mortgage Assignment | **Transaction #:** | |
| **Document Date:** | 09/14/2022 | **Document Page Count:** | 2 |
| **Reference Info:** | | **Operator Id:** | dkrasley |

**RETURN TO: (**Simplifile)
Westcor Land Title Insurance Company
875 Concourse Parkway South Suite 200
Maitland, FL 32751
(484) 532-5594

**PAID BY:**
WESTCOR LAND TITLE INSURANCE COMPANY

**\* PROPERTY DATA**
Parcel ID #:
Address:            108 W SPRING AVE
                    CONDO  9
                    PA
Municipality:       Lower Merion Township
                    (100%)
School District:    Lower Merion

**\* ASSOCIATED DOCUMENT(S):**
MTG BK 12070 PG 02323

**FEES / TAXES:**
Recording Fee:Mortgage
Assignment            $80.75

**Total:**              $80.75

MTG BK 15667 PG 01382 to 01384

Recorded Date: 09/26/2022 10:53:48 AM

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office in
Montgomery County, Pennsylvania.



**Jeanne Sorg**
**Recorder of Deeds**

Rev1 2016-01-29

# PLEASE DO NOT DETACH
THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT
NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
LOWER MERION TOWNSHIP
108 W SPRING AVE  CONDO  9
SHIPPEN BERNICE L                                        $15.00
09/26/2022                                                JG

**PREPARED BY:**
BANK OF AMERICA, N.A
C/O FirstKey Mortgage, LLC, 900 Third Avenue,
5th Floor, New York, NY 10022
**WHEN RECORDED RETURN TO:**
Westcor Land Title Insurance Co
401 Plymouth Road, Suite 500
Plymouth Meeting, PA 19462

Parcel #

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned, **BANK OF AMERICA, N.A.,** located at C/O FirstKey Mortgage, LLC, 900 Third Avenue, 5th Floor, New York, NY 10022, ("ASSIGNOR/GRANTOR"), hereby grants, conveys, assigns to: **FIRSTKEY MORTGAGE, LLC,** located at. 900 Third Avenue, 5th Floor, New York, NY 10022, ("ASSIGNEE/GRANTEE"), all beneficial interest under that certain **MORTGAGE,** dated **03/14/2007** and executed by **BERNICE L. SHIPPEN,** borrower(s) to: **Mortgage Electronic Registration Systems, Inc., as nominee for COUNTRYWIDE HOME LOANS, INC,** as original lender, and certain instrument recorded **03/30/2007,** in **BOOK: 12070 PAGE: 02323 INSTRUMENT: 2007039624,** in the Official Records of **MONTGOMERY** County, the State of **Pennsylvania,** given to secure a certain Promissory Note in the amount of **$182,000.00** covering the property located at **112 W SPRING AVE, ARDMORE, PA 19003**

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Mortgage including the right to have reconveyed, in whole or in part, the real property described therein

CERTIFICATE OF BUSINESS RESIDENCE: I, **Neil Coffey,** do certify that the Assignee's precise residence is **900 Third Avenue, 5th Floor, New York, NY 10022**



Dated. September 14th, 2022

**ASSIGNOR:**

**By: Westcor**
**fact**

By: _____

Name:  **Neil Coffey**

Title:  **Authorized Signatory**

* **Power of Attorney recorded in Montgomery County, PA in**

**Book 272 Page 2994 Instrument 2022078404**

State of  Pennsylvania

County of  Montgomery

Before me, **Kathleen Bonfiglio,** duly commissioned Notary Public, on this day personally appeared **Neil Coffey,**
**Authorized Signatory of Westcor Land Title Insurance Company, attorney-in-fact for BANK OF AMERICA,**
**N.A.,** known to me (or proved to me on the oath of _____ or through _____) to be the person
whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for
the purposes and consideration therein expressed in his/her authorized capacity.

Given under my hand and seal of office this 14th day of September, 2022

_____
Notary Public's Signature

**Printed Name: Kathleen Bonfiglio**

**My Commission Expires: 5/17/2025**

Property Address. 112 W SPRING AVE, ARDMORE, PA 19003

Commonwealth of Pennsylvania-Notary Seal
Kathleen Bonfiglio, Notary Public
Montgomery County
My Commission Expires May 17, 2025
Commission Number

  

**MTG BK 15798 PG 00427 to 00429**
INSTRUMENT # : 2023042636
RECORDED DATE: 08/14/2023 09:55:51 AM

RECORDER OF DEEDS
MONTGOMERY COUNTY
*Jeanne Sorg*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**MONTGOMERY COUNTY ROD**

| OFFICIAL RECORDING COVER PAGE | Page 1 of 3 |
|---|---|

| | | |
|---|---|---|
| **Document Type:** Mortgage Assignment | **Transaction #:** | |
| **Document Date:** 10/13/2022 | **Document Page Count:** 2 | |
| **Reference Info:** | **Operator Id:** | |

| **RETURN TO:** (Simplifile) | **PAID BY:** |
|---|---|
| Residential Real Estate Review, Inc. | RESIDENTIAL REAL ESTATE REVIEW INC |
| 3217 Decker Lake Dr | |
| West Valley City, UT 84119-3284 | |
| (801) 594-6000 | |

**\* PROPERTY DATA**
Parcel ID #:
Address:          108 W SPRING AVE
                  CONDO  9
                  PA
Municipality:     Lower Merion Township
                  (100%)
School District:  Lower Merion

**\* ASSOCIATED DOCUMENT(S):**
MTG BK 12070 PG 02323

| **FEES / TAXES:** | MTG BK 15798 PG 00427 to 00429 |
|---|---|
| Recording Fee:Mortgage | Recorded Date: 08/14/2023 09:55:51 AM |
| Assignment          $59.50 | |
| **Total:**          $59.50 | I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office in Montgomery County, Pennsylvania. |



**Jeanne Sorg**
**Recorder of Deeds**

Rev1 2016-01-29

# PLEASE DO NOT DETACH
THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT
NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
LOWER MERION TOWNSHIP
108 W SPRING AVE  CONDO  9
SHIPPEN BERNICE L                                    $15.00
                                08/11/2023              JG

**PREPARED BY:**
FIRSTKEY MORTGAGE, LLC
900 Third Avenue, 5th Floor, New York, NY 10022
**WHEN RECORDED RETURN TO:**
**Residential RealEstate Review**
**3217 S Decker Lake Drive,**
**Salt Lake City, UT 84119**

Parcel #:

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned, **FIRSTKEY MORTGAGE, LLC,** located at 900 Third Avenue, 5th Floor, New York, NY 10022,  ("ASSIGNOR/GRANTOR"), hereby grants, conveys, assigns to:

### Towd Point Mortgage Trust 2022-3, U.S. Bank National Association, as Indenture Trustee,

located at: C/O Select Portfolio Servicing, Inc. 3217 S Decker Lake Drive, Salt Lake City, UT 84119, ("ASSIGNEE/GRANTEE"), all beneficial interest under that certain **MORTGAGE,** dated **03/14/2007** and executed by **BERNICE L. SHIPPEN,** borrower(s) to: **Mortgage Electronic Registration Systems, Inc., as nominee for COUNTRYWIDE HOME LOANS, INC,** as original lender, and certain instrument recorded **03/30/2007,** in **BOOK: 12070 PAGE: 02323 INSTRUMENT: 2007039624,** in the Official Records of **MONTGOMERY** County, the State of **Pennsylvania,** given to secure a certain Promissory Note in the amount of **$182,000.00** covering the property located at **112 W SPRING AVE, ARDMORE, PA 19003.**

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Mortgage including the right to have reconveyed, in whole or in part, the real property described therein.

CERTIFICATE OF BUSINESS RESIDENCE: I, _____, do certify that the Assignee's

precise residence is C/O Select Portfolio Servicing, Inc. _____.

 3217 S Decker Lake Drive, Salt Lake City, UT 84119

**Last Assignment of Record:**
Bank of America to Firstkey Mortgage, LLC. Dated: 09-14-2022 Recorded 09-26-2022 Inst# 2022092624 MTG BK: 15667 PG: 01382 to 01384

Dated: October 13th, 2022

**ASSIGNOR: FIRSTKEY MORTGAGE, LLC**

**By: Westcor Land Title Insurance Company, it's attorney-in-fact**

By: _____

**Name:  Neil Coffey**

**Title:  Authorized Signatory**

**\* Power of Attorney Recorded in MONTGOMERY County,**

**PA, in Book 271 Page 011 Instrument 2022022397**

State of:  Pennsylvania

County of: Montgomery

Before me, **Kathleen Bonfiglio,** duly commissioned Notary Public, on this day personally appeared **Neil Coffey, Authorized Signatory of Westcor Land Title Insurance Company, attorney-in-fact for FIRSTKEY MORTGAGE, LLC,** known to me (or proved to me on the oath of _____ or through

_____) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed in his/her authorized capacity.

Given under my hand and seal of office this 13th day of October, 2022.

_____
Notary Public's Signature

**Printed Name: Kathleen Bonfiglio**

**My Commission Expires: 5/17/2025**

Property Address: 112 W SPRING AVE, ARDMORE, PA 19003

Commonwealth of Pennsylvania-Notary Seal
Kathleen Bonfiglio, Notary Public
Montgomery County
My Commission Expires May 17 2025
Commission Number

# EXHIBIT "E"

**L.B.F. 3015.1**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

In re:        Shippen, Bernice Louellen              Chapter      13

Case No.    _____

Debtor(s)

## Chapter 13 Plan

☑ Original
❑ _____Amended

Date:        **01/20/2025**

### THE DEBTOR HAS FILED FOR RELIEF UNDER
### CHAPTER 13 OF THE BANKRUPTCY CODE

### YOUR RIGHTS WILL BE AFFECTED

You should have received from the court a separate Notice of the Hearing on Confirmation of Plan, which contains the date of the confirmation hearing on the Plan proposed by the Debtor. This document is the actual Plan proposed by the Debtor to adjust debts. You should read these papers carefully and discuss them with your attorney. **ANYONE WHO WISHES TO OPPOSE ANY PROVISION OF THIS PLAN MUST FILE A WRITTEN OBJECTION** in accordance with Bankruptcy Rule 3015 and Local Rule 3015-4. **This Plan may be confirmed and become binding, unless a written objection is filed.**

### IN ORDER TO RECEIVE A DISTRIBUTION UNDER THE PLAN, YOU
### MUST FILE A PROOF OF CLAIM BY THE DEADLINE STATED IN THE
### NOTICE OF MEETING OF CREDITORS.

| Part 1: | Bankruptcy Rule 3015.1(c) Disclosures |
|---|---|

❑ Plan contains non-standard or additional provisions – see Part 9

❑ Plan limits the amount of secured claim(s) based on value of collateral and/or changed interest rate – see Part 4

❑ Plan avoids a security interest or lien – see Part 4 and/or Part 9

| Part 2: | Plan Payment, Length and Distribution – *PARTS 2(c) & 2(e) MUST BE COMPLETED IN EVERY CASE* |
|---|---|

**§ 2(a) Plan payments (For Initial and Amended Plans):**

**Total Length of Plan:** _____**60**_____ months.

**Total Base Amount** to be paid to the Chapter 13 Trustee ("Trustee")    **$99,540.00**

Debtor shall pay the Trustee _____**$1,659.00**_____ per month for _____**60**_____ months and then
Debtor shall pay the Trustee _____ per month for the remaining _____months;

**or**

Debtor shall have already paid the Trustee _____ through month number _____and

then shall pay the Trustee _____ per month for the remaining _____ months.

☐ Other changes in the scheduled plan payment are set forth in § 2(d)

**§ 2(b) Debtor shall make plan payments to the Trustee from the following sources in addition to future wages (Describe source, amount and date when funds are available, if known):**

**§ 2(c) Alternative treatment of secured claims:**

☑ **None.** If "None" is checked, the rest of § 2(c) need not be completed.

**§ 2(d) Other information that may be important relating to the payment and length of Plan:**

**§ 2(e) Estimated Distribution:**

| | | | | |
|---|---|---|---|---|
| A. | Total Administrative Fees (Part 3) | | | |
| | 1. | Postpetition attorney's fees and costs | $ | 4,375.00 |
| | 2. | Postconfirmation Supplemental attorney's fees and costs | $ | 0.00 |
| | | Subtotal | $ | 4,375.00 |
| B. | Other Priority Claims (Part 3) | | $ | 0.00 |
| C. | Total distribution to cure defaults (§ 4(b)) | | $ | 6,262.92 |
| D. | Total distribution on secured claims (§§ 4(c) &(d)) | | $ | 7,948.00 |
| E. | Total distribution on general unsecured claims(Part 5) | | $ | 70,982.00 |
| | | Subtotal | $ | 89,567.92 |
| F. | Estimated Trustee's Commission | | $ | 9,951.99 |
| G. | Base Amount | | $ | 99,540.00 |

**§2 (f) Allowance of Compensation Pursuant to L.B.R. 2016-3(a)(2)**

☑ **By checking this box, Debtor's counsel certifies that the information contained in Counsel's Disclosure of Compensation [Form B2030] is accurate, qualifies counsel to receive compensation pursuant to L.B.R. 2016-3(a)(2), and requests this Court approve counsel's compensation in the total amount of $ __5,875.00__ , with the Trustee distributing to counsel the amount stated in §2(e)A.1. of the Plan. Confirmation of the plan shall constitute allowance of the requested compensation.**

| Part 3: | Priority Claims |
|---|---|

**§ 3(a) Except as provided in § 3(b) below, all allowed priority claims will be paid in full unless the creditor agrees otherwise.**

| Creditor | Proof of Claim Number | Type of Priority | Amount to be Paid by Trustee |
|---|---|---|---|
| Cibik Law, P.C. | | Attorney Fees | $4,375.00 |

**§ 3(b) Domestic Support obligations assigned or owed to a governmental unit and paid less than full amount.**

☑ **None.** If "None" is checked, the rest of § 3(b) need not be completed.

**Part 4:    Secured Claims**

**§ 4(a) Secured Claims Receiving No Distribution from the Trustee:**

☐ **None.** If "None" is checked, the rest of § 4(a) need not be completed.

| Creditor | Proof of Claim Number | Secured Property |
|---|---|---|
| ☑  If checked, the creditor(s) listed below will receive no distribution from the trustee and the parties' rights will be governed by agreement of the parties and applicable nonbankruptcy law.<br><br>Global Lending Services LLC | | 2022 Audi Q5 |

**§ 4(b) Curing default and maintaining payments**

☐ **None.** If "None" is checked, the rest of § 4(b) need not be completed.

The Trustee shall distribute an amount sufficient to pay allowed claims for prepetition arrearages; and, Debtor shall pay directly to creditor monthly obligations falling due after the bankruptcy filing in accordance with the parties' contract.

| Creditor | Proof of Claim Number | Description of Secured Property and Address, if real property | Amount to be Paid by Trustee |
|---|---|---|---|
| Select Portfolio Servicing, Inc (Arrearage) | | 108 W Spring Ave Apt 9 Ardmore, PA 19003-1232 | $6,262.92 |

**§ 4(c) Allowed secured claims to be paid in full: based on proof of claim or preconfirmation determination of the amount, extent or validity of the claim**

☐ **None.** If "None" is checked, the rest of § 4(c) need not be completed.

(1) Allowed secured claims listed below shall be paid in full and their liens retained until completion of payments under the plan.

(2) If necessary, a motion, objection and/or adversary proceeding, as appropriate, will be filed to determine the amount, extent or validity of the allowed secured claim and the court will make its determination prior to the confirmation hearing.

(3) Any amounts determined to be allowed unsecured claims will be treated either: (A) as a general unsecured claim under Part 5 of the Plan or (B) as a priority claim under Part 3, as determined by the court.

(4) In addition to payment of the allowed secured claim, "present value" interest pursuant to 11 U.S.C. § 1325(a) (5)(B)(ii) will be paid at the rate and in the amount listed below. *If the claimant included a different interest rate or amount for "present value" interest in its proof of claim or otherwise disputes the amount provided for "present value" interest, the claimant must file an objection to confirmation.*

(5) Upon completion of the Plan, payments made under this section satisfy the allowed secured claim and release the corresponding lien.

| Name of Creditor | Claim Number | Description of Secured Property | Allowed Secured Claim | Present Value Interest Rate | Dollar Amount of Present Value Interest | Amount to be Paid by Trustee |
|---|---|---|---|---|---|---|
| Township of Lower Merion | | 108 W Spring Ave Apt 9 Ardmore, PA 19003-1232 | $7,948.00 | 0.00% | $0.00 | $7,948.00 |

### § 4(d) Allowed secured claims to be paid in full that are excluded from 11 U.S.C. § 506

☑ **None.** If "None" is checked, the rest of § 4(d) need not be completed.

### § 4(e) Surrender

☑ **None.** If "None" is checked, the rest of § 4(e) need not be completed.

### § 4(f) Loan Modification

☑ **None.** If "None" is checked, the rest of § 4(f) need not be completed.

(1) Debtor shall pursue a loan modification directly with _____or its successor in interest or its current servicer ("Mortgage Lender"), in an effort to bring the loan current and resolve the secured arrearage claim.

(2) During the modification application process, Debtor shall make adequate protection payments directly to Mortgage Lender in the amount of _____per month, which represents _____(*describe basis of adequate protection payment*). Debtor shall remit the adequate protection payments directly to the Mortgage Lender.

(3) If the modification is not approved by _____(date), Debtor shall either (A) file an amended Plan to otherwise provide for the allowed claim of the Mortgage Lender; or (B) Mortgage Lender may seek relief from the automatic stay with regard to the collateral and Debtor will not oppose it.

## Part 5:    General Unsecured Claims

### § 5(a) Separately classified allowed unsecured non-priority claims

☐ **None.** If "None" is checked, the rest of § 5(a) need not be completed.

| Creditor | Proof of Claim Number | Basis for Separate Classification | Treatment | Amount to be Paid by Trustee |
|---|---|---|---|---|
| Cornerstone | | Student Loan | No Distribution, Survives Discharge Pursuant to 11 U.S.C. § 523(a)(8). | $0.00 |
| Cornerstone | | Student Loan | No Distribution, Survives Discharge Pursuant to 11 U.S.C. § 523(a)(8). | $0.00 |
| Mohela | | Student Loan | No Distribution, Survives Discharge Pursuant to 11 U.S.C. § 523(a)(8). | $0.00 |
| Mohela | | Student Loan | No Distribution, Survives Discharge Pursuant to 11 U.S.C. § 523(a)(8). | $0.00 |
| Mohela | | Student Loan | No Distribution, Survives Discharge Pursuant to 11 U.S.C. § 523(a)(8). | $0.00 |
| Mohela | | Student Loan | No Distribution, Survives Discharge Pursuant to 11 U.S.C. § 523(a)(8). | $0.00 |

**§ 5(b) Timely filed unsecured non-priority claims**

**(1)** Liquidation Test *(check one box)*

☐ All Debtor(s) property is claimed as exempt.

☑ Debtor(s) has non-exempt property valued at $ ___71,503.93___ for purposes of § 1325(a)(4) and plan provides for distribution of $ ___70,982.00___ to allowed priority and unsecured general creditors.

**(2)** Funding: § 5(b) claims to be paid as follows *(check one box):*

☐ Pro rata

☑ 100%

☐ Other (Describe) _____

---

**Part 6:    Executory Contracts & Unexpired Leases**

☑ **None.** If "None" is checked, the rest of § 6 need not be completed.

---

**Part 7:    Other Provisions**

**§ 7(a) General principles applicable to the Plan**

(1) Vesting of Property of the Estate *(check one box)*

☑ Upon confirmation

☐ Upon discharge

(2) Subject to Bankruptcy Rule 3012 and 11 U.S.C. §1322(a)(4), the amount of a creditor's claim listed in its proof of claim controls over any contrary amounts listed in Parts 3, 4 or 5 of the Plan. Debtor shall amend the plan or file an objection should a filed unsecured claim render the Plan unfeasible.

(3) Post-petition contractual payments under § 1322(b)(5) and adequate protection payments under § 1326(a)(1)(B),(C) shall be disbursed to the creditors by the debtor directly. All other disbursements to creditors shall be made by the Trustee.

(4) If Debtor is successful in obtaining a recovery in a personal injury or other litigation in which Debtor is the plaintiff, before the completion of plan payments, any such recovery in excess of any applicable exemption will be paid to the Trustee as a special Plan payment to the extent necessary to pay priority and general unsecured creditors, or as agreed by the Debtor and the Trustee and approved by the court.

**§ 7(b) Affirmative duties on holders of claims secured by a security interest in debtor's principal residence**

(1) Apply the payments received from the Trustee on the pre-petition arrearage, if any, only to such arrearage.

(2) Apply the post-petition monthly mortgage payments made by the Debtor to the post-petition mortgage obligations as provided for by the terms of the underlying mortgage note.

(3) Treat the pre-petition arrearage as contractually current upon confirmation for the Plan for the sole purpose of precluding the imposition of late payment charges or other default-related fees and services based on the pre-petition default or default(s). Late charges may be assessed on post-petition payments as provided by the terms of the mortgage and note.

(4) If a secured creditor with a security interest in the Debtor's property sent regular statements to the Debtor pre-petition, and the Debtor provides for payments of that claim directly to the creditor in the Plan, the holder of the claims shall resume sending customary monthly statements.

(5) If a secured creditor with a security interest in the Debtor's property provided the Debtor with coupon books for payments prior to the filing of the petition, upon request, the creditor shall forward post-petition coupon book(s) to the Debtor after this case has been filed.

(6) Debtor waives any violation of stay claim arising from the sending of statements and coupon books as set forth above.

**§ 7(c) Sale of Real Property**

☑ **None.** If "None" is checked, the rest of § 7(c) need not be completed.

| Part 8: | Order of Distribution |
|---|---|

**The order of distribution of Plan payments will be as follows:**

> **Level 1:** Trustee Commissions*
> **Level 2:** Domestic Support Obligations
> **Level 3:** Adequate Protection Payments
> **Level 4:** Debtor's attorney's fees
> **Level 5:** Priority claims, pro rata
> **Level 6:** Secured claims, pro rata
> **Level 7:** Specially classified unsecured claims
> **Level 8:** General unsecured claims
> **Level 9:** Untimely filed general unsecured non-priority claims to which debtor has not objected

*\*Percentage fees payable to the standing trustee will be paid at the rate fixed by the United States Trustee not to exceed ten (10) percent. If the Trustee's compensation rate increases resulting in the Plan becoming underfunded, the debtor shall move to modify the Plan to pay the difference.*

| Part 9: | Non Standard or Additional Plan Provisions |
|---|---|

Under Bankruptcy Rule 3015.1(e), Plan provisions set forth below in Part 9 are effective only if the applicable box in Part 1 of this Plan is checked. Nonstandard or additional plan provisions placed elsewhere in the Plan are void.

☑ **None.** If "None" is checked, the rest of Part 9 need not be completed.

| Part 10: | Signatures |
|---|---|

By signing below, attorney for Debtor(s) or unrepresented Debtor(s) certifies that this Plan contains no nonstandard or additional provisions other than those in Part 9 of the Plan, and that the Debtor(s) are aware of, and consent to the terms of this Plan.

Date:     01/20/2025                         /s/ Michael A. Cibik
                                             Michael A. Cibik
                                             Attorney for Debtor(s)

If Debtor(s) are unrepresented, they must sign below.

Date:                                        
                                             Bernice Louellen Shippen
                                             Debtor

Date:                                        
                                             Joint Debtor

# EXHIBIT "F"

**SPS** SELECT *Portfolio* SERVICING, inc.

**Financial Breakdown Statement**
Data date:11/19/2025 08:27:11AM
Loan Number
Prepared B

**MFR Datasheet**

| Loan Information | | | |
|---|---|---|---|
| Loan Number | | Client Id | 408 |
| Debtors Name - 1 | SHIPPEN, BERNICE L | Acquired Date | 08/01/2022 |
| Debtors Name - 2 | - | Note Type | FIXED |
| Property Address | 108 W SPRING AVE | Current Interest Rate | 4.62500% |
| City | ARDMORE | Lien Position | 1st |
| Zip | 19003 | Last BPO Value | $361,000.00 |
| Property State | PA | Contractual Due Date | 02/01/2023 |
| Maturity Date | 12/01/2052 | Multiple Loans | |
| | | Loan Modified Date | 01/01/2022 |

| Bankruptcy Information | | | | | |
|---|---|---|---|---|---|
| Bankruptcy Case # | 25-10238 | Previous MFR? | MM/DD/YYYY | Comment on Previous Actions | |
| Filing Date | 01/20/2025 | Previous Agreed Order? | MM/DD/YYYY | | |
| Person filing | BERNICE L SHIPPEN | Post Amounts in Plan? | No | | |
| Number of previous filings | 3 | TPA? | No | | |

| Post Petition Default Information | | | |
|---|---|---|---|
| Post petition due date | 02/01/2025 | Post petition insurance | $0.00 |
| Post petition amount due | $10,532.40 | Post petition taxes | $0.00 |
| Escrow Shortage | $0.00 | Post petition MI | $0.00 |
| Suspense | $0.00 | Total Post petition due | $10,532.40 |
| Total for Agreed Order | $10,532.40 | | |

| Post Petition Payment History | | | | |
|---|---|---|---|---|
| Post Pmt Rcpt | Post Due Dt Pd | Mo $ Due | $ Received | Comments |
| Due | 02/01/2025 | $1,053.24 | $0.00 | |
| Due | 03/01/2025 | $1,053.24 | $0.00 | |
| Due | 04/01/2025 | $1,053.24 | $0.00 | |
| Due | 05/01/2025 | $1,053.24 | $0.00 | |
| Due | 06/01/2025 | $1,053.24 | $0.00 | |
| Due | 07/01/2025 | $1,053.24 | $0.00 | |
| Due | 08/01/2025 | $1,053.24 | $0.00 | |
| Due | 09/01/2025 | $1,053.24 | $0.00 | |
| Due | 10/01/2025 | $1,053.24 | $0.00 | |
| Due | 11/01/2025 | $1,053.24 | $0.00 | |
| Total Due | | $10,532.40 | | Total Pmts Due | |
| Total Received | | | $0.00 | $10,532.40 |

| Post Petition Insurance/Tax/MI Advances | | | |
|---|---|---|---|
| Post Insurance | Comments | Post Ins Amt | Post Ins Total |
| Post Petition Insurance Total | | $0.00 | |

| Post Tax | Comments | Post Tax Amt | Post Tax Total |
|---|---|---|---|
| Post Petition Taxes Total | | $0.00 | |

| Post MI | Comments | Post MI Amt | Post MI Total |
|---|---|---|---|
| Post Petition MI Total | | $0.00 | |

| Post Petition Insurance/Tax/MI Advance Comments |
|---|
| Escrowed Loan |

| Pre Petition claim information |
|---|

**SPS** SELECT *Portfolio* SERVICING, inc.

**MFR Post-Petition Payment History for Filing**

| Loan Information | |
|---|---|
| Loan Number | |
| Debtors Name - 1 | SHIPPEN, BERNICE L |
| Debtors Name - 2 | - |
| Property Address | 108 W SPRING AVE |
| Property State | PA |

| Bankruptcy Information | |
|---|---|
| Bankruptcy Case # | 25-10238 |
| Filing Date | 01/20/2025 |
| Person filing | BERNICE L SHIPPEN |
| Number of previous filings | 3 |

| Post Petition Default Information | |
|---|---|
| Post petition due date | 02/01/2025 |
| Post petition amount due | $10,532.40 |
| Escrow Shortage | $0.00 |
| Suspense | $0.00 |
| Total Post petition due | $10,532.40 |

| Post Petition Payment History | | | | |
|---|---|---|---|---|
| Post Pmt Rcpt | Post Due Dt Pd | Mo $ Due | $ Received | Comments |
| Due | 02/01/2025 | $1,053.24 | $0.00 | |
| Due | 03/01/2025 | $1,053.24 | $0.00 | |
| Due | 04/01/2025 | $1,053.24 | $0.00 | |
| Due | 05/01/2025 | $1,053.24 | $0.00 | |
| Due | 06/01/2025 | $1,053.24 | $0.00 | |
| Due | 07/01/2025 | $1,053.24 | $0.00 | |
| Due | 08/01/2025 | $1,053.24 | $0.00 | |
| Due | 09/01/2025 | $1,053.24 | $0.00 | |
| Due | 10/01/2025 | $1,053.24 | $0.00 | |
| Due | 11/01/2025 | $1,053.24 | $0.00 | |
| Total Due | | $10,532.40 | | Total Pmts Due |
| Total Received | | | $0.00 | $10,532.40 |

# EXHIBIT "G"

### Payoff Calculation Totals (PAY4/PG1)

```
                        AS-OF 11/19/25  PAYOFF CALCULATION TOTALS 11/18/25  10:32:14
                        CONTACT NAME BERNICE L SHIPPEN
--------------------------------------------------------------------------------
PRINCIPAL BALANCE         156,825.07    ---- 1ST MORTGAGE RATE CHANGES ----
INTEREST 11/19/25          20,294.90    INT FROM      RATE      AMOUNT
PRO RATA MIP/PMI                 .00    01/01/23   4.62500    20,294.90
ESCROW ADVANCE              8,738.00    11/19/25
ESCROW BALANCE                   .00
SUSPENSE BALANCE                 .00
HUD BALANCE                      .00
REPLACEMENT RESERVE              .00
RESTRICTED ESCROW                .00
TOTAL-FEES                       .00
ACCUM LATE CHARGES            160.36
ACCUM NSF CHARGES                .00
OTHER FEES DUE                   .00
PENALTY INTEREST                 .00
FLAT/OTHER PENALTY FEE           .00    TOTAL 1ST MTG INTEREST   20,294.90
CR LIFE/ORIG FEE RBATE           .00    TOTAL TO PAYOFF          188,526.00
RECOVERABLE BALANCE         2,507.67 NUMBER OF COPIES: 1    PRESS PF1 TO PRINT
                                        TOTAL PAGE 2                    .00

--------------------------------------------------------------------------------
```

# EXHIBIT "H"

**Fill in this information to identify your case and this filing:**

| Debtor 1 | **Bernice** First Name | **Louellen** Middle Name | **Shippen** Last Name |
|---|---|---|---|

| Debtor 2 (Spouse, if filing) | First Name | Middle Name | Last Name |
|---|---|---|---|

United States Bankruptcy Court for the: **Eastern** District of **Pennsylvania**

Case number

☐ Check if this is an amended filing

Official Form 106A/B

# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1: Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

   ☐ No. Go to Part 2.
   ☑ Yes. Where is the property?

   1.1 **108 W Spring Ave Apt 9**
   Street address, if available, or other description

   **Ardmore, PA 19003-1232**
   City        State        ZIP Code

   **Montgomery**
   County

   **What is the property?** Check all that apply.
   ☐ Single-family home
   ☑ Duplex or multi-unit building
   ☐ Condominium or cooperative
   ☐ Manufactured or mobile home
   ☐ Land
   ☐ Investment property
   ☐ Timeshare
   ☐ Other _____

   **Who has an interest in the property?** Check one.
   ☑ Debtor 1 only
   ☐ Debtor 2 only
   ☐ Debtor 1 and Debtor 2 only
   ☐ At least one of the debtors and another

   Other information you wish to add about this item, such as local property identification number: _____

   Source of Value: **Bank of America ($316,640 less 20% closing costs)**

   Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

   | Current value of the entire property? | Current value of the portion you own? |
   |---|---|
   | **$253,312.00** | **$253,312.00** |

   Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
   **Homestead**

   ☐ Check if this is community property (see instructions)

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here ............................ → | **$253,312.00** |

## Part 2: Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles

   ☐ No
   ☑ Yes